**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

RECEIVED

2015 FEB -9 P 2: 46

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| USAA Casualty Insurance Company, | ) |
| | ) |
| Plaintiff, | ) Civil File Action No. |
| | ) |
| | ) 2:15-CV-105 |
| vs. | ) |
| | ) |
| Whirlpool Corporation, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR PROPERTY**
**DAMAGE AND DEMAND FOR JURY TRIAL**

Plaintiff USAA Casualty Insurance Company sues Whirlpool Corporation as

follows:

**JURISDICTION AND VENUE**

1.      Plaintiff USAA Casualty Insurance Company ("USAA") is an

insurance company duly organized and existing under the laws of the state of

Texas, with its principal place of business located at 9800 Fredericksburg Road,

San Antonio, Texas 78288.

2.      At all times material hereto, USAA provided insurance coverage to

Betty Petty in connection with the residential property that is the subject of this

Complaint.

3.      Defendant Whirlpool Corporation ("Whirlpool") is a Delaware

company with its principal place of business in Benton Harbor, Michigan.  At all

1

times material hereto, Whirlpool designed and manufactured appliances, including residential refrigerators such as the one that is at issue in this Complaint, and sold and distributed, or caused to be sold and distributed, those products in the State of Alabama.  Defendant may be served with process upon its registered agent, CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

    4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and there is diversity of citizenship between USAA and Whirlpool.

    5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because the subject property is situated in this judicial district.

## ALLEGATION OF FACTS

    6.    This complaint arises from a fire that occurred at the home of Betty Petty and located at ███████████████, Montgomery, Alabama (the "Home").

    7.    On February 24, 2013, around midnight, Ms. Petty was awakened by the sound of a smoke detector sounding.

8.     Ms. Petty witnessed black smoke throughout the home and flames erupting from the bottom of her side by side Maytag refrigerator, model number 464MSD2756GEB (the "Refrigerator"), that was in use at the time of the fire.

9.     Maytag is the trade name of certain appliances manufactured by Whirlpool, specifically the one at issue in this case.

10.    An investigation ensued and revealed that the fire and resulting damages were caused by the failure of the Refrigerator's compressor.

11.    A refrigerator compressor circulates refrigerant in order to control temperature.

12.    Within the compressor is a component known as a relay, which causes the compressor to power on when necessary to maintain a set temperature.

13.    During Plaintiff's investigation, it was revealed that Whirlpool, in conjunction with the U.S. Consumer Product Safety Commission, issued a recall for similar refrigerators on March 10, 2009.

14.    The recall specifically states that it was being issued due to the discovery of "[a]n electrical failure in the relay, the component that turns on the refrigerator's compressor, can cause overheating and pose a serious fire hazard." *See* Exhibit 1.

3

15.    Moreover, the recall reported that Whirlpool had, to date, "received 41 reports of refrigerator relay ignition, including 16 reports of property damage." *See* Exhibit 1.

16.    On August 25, 2009, the recall was expanded to include additional refrigerator models and declared an additional 23 reports of ignition due to the defective compressor relay, 4 of which included "property damage ranging from smoke damage to extensive kitchen damage." *See* Exhibit 2.

17.    Plaintiff's investigation revealed that the relay in the Refrigerator at issue was defective, and that conclusion is further established by the issuance of the recalls and, particularly, the language contained within them.

18.    The defective compressor relay was the actual and proximate cause of the fire and, thus, the damages suffered as a result.

19.    Pursuant to its policy of insurance, Plaintiff indemnified its insured, Betty Petty, for the damages caused by the fire in an amount of $191,960.90.

20.    Plaintiff is equitably and contractually subrogated to all rights and causes of action against third parties which belong to Ms. Petty by virtue of and to the extent of the amount paid.

4

## COUNT I – ALABAMA'S EXTENDED
## MANUFACTURERS LIABILITY DOCTRINE

21.    Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 20 above to the same extent as if fully set out herein.

22.    At all times material to this Complaint, Whirlpool was engaged in the business of designing, manufacturing, and selling, among other appliances, residential refrigerators.

23.    Whirlpool designed, manufactured, and sold the Refrigerator in use at the home of Plaintiff's insured.

24.    Whirlpool placed the Refrigerator into the stream of commerce.

25.    The Refrigerator was expected to, and did, reach Plaintiff's insured without substantial change in the condition in which it was sold by Defendant.

26.    The Refrigerator was used for its intended purpose, with such purpose being reasonably foreseeable to Whirlpool.

27.    At the time it was sold by Defendant, the Refrigerator was in a defective and unreasonably dangerous condition because it contained a faulty compressor delay prone to starting fires.

28.    The defective and unreasonably dangerous condition of the Refrigerator was the cause of the fire and, thus, the direct, proximate, and foreseeable cause of the $191,960.90 in damages suffered by Plaintiff.

## COUNT II – NEGLIGENCE

29.    Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 20 above to the same extent as if fully set out herein.

30.    At all times material to this Complaint, Whirlpool was engaged in the business of designing, manufacturing, and selling, among other appliances, residential refrigerators.

31.    Whirlpool designed and manufactured the Refrigerator in use at the home of Plaintiff's insured.

32.    Whirlpool placed the Refrigerator into the stream of commerce.

33.    The Refrigerator was expected to, and did, reach Plaintiff's insured without substantial change in the condition in which it was sold.

34.    The Refrigerator was used for its intended purpose, with such purpose being reasonably foreseeable to Whirlpool.

35.    Whirlpool owed to Plaintiff the duty to use reasonable care in designing and manufacturing the Refrigerator so that it would reach its intended

6

user in a non-defective, safe condition, thereby circumventing the exposure to an unreasonable risk of harm.

36.   Whirlpool breached the duty it owed to Plaintiff in one or more of the following particulars:

    A.   Designing the Refrigerator in a manner that created a defective condition;

    B.   Manufacturing the Refrigerator in a manner that created a defective condition;

    C.   Designing the Refrigerator in a manner which rendered the product unsuited for its intended purpose;

    D.   Manufacturing the Refrigerator in a manner which rendered the product unsuited for its intended purpose;

    E.   Designing the Refrigerator in a manner that rendered a primary component prone to ignition which, in turn, caused the Refrigerator to fail in its entirety

    F.   Manufacturing the Refrigerator in a manner that rendered a primary component prone to ignition which, in turn, caused the Refrigerator to fail in its entirety;

    G.   Failing to design the Refrigerator's compressor in a condition suitable for maintaining proper temperature without creating an unreasonable danger;

    H.   Failing to manufacture the Refrigerator's compressor in a condition suitable for maintaining proper temperature without creating an unreasonable danger;

    I.   Failing to adequately inspect the Refrigerator before placing it into the stream of commerce;

    J.   Failing to warn Plaintiff of the defective and dangerous nature in which the Refrigerator was manufactured; and

      K.     Other acts or omissions as discovery may reveal.

37.    The defective and unreasonably dangerous manner in which the Refrigerator was designed and/or manufactured was the cause of the fire and, thus, the direct, proximate, and foreseeable cause of the $191,960.90 in damages suffered by Plaintiff.

## COUNT III – WILLFUL, WANTON, AND RECKLESS CONDUCT

38.    Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 20 above to the same extent as if fully set out herein.

39.    Whirlpool designed, manufactured, and placed the Refrigerator into the stream of commerce and failed to warn Plaintiff's insured of the hazard associated with fire ignition.

40.    Recalls were issued by Whirlpool in connection with similar refrigerator models as a result of those models causing fire and related property damage and bodily injury.

41.    Upon information and belief, the Refrigerator was not subject to those recalls.

42.    The subject refrigerator caught fire for the same reason that similar models were recalled, and Defendant failed to warn Ms. Petty of any dangerous or defective condition in the Refrigerator.

43.    Whirlpool did know or should have known that the Refrigerator was sold in a dangerous and defective condition, as it was prone to fire ignition, and its failure to warn of said condition constitutes willful, wanton, and reckless conduct.

44.    As a direct, proximate, and foreseeable result of Whirlpool's willful, wanton, and reckless conduct, Plaintiff has sustained damages in the amount of $191,960.90.

**WHEREFORE**, Plaintiff prays:

A.    That process issue and be served upon Whirlpool, compelling it to appear and answer this Complaint;

B.    That Plaintiff have judgment against Whirlpool for the full amount of its damages;

C.    That all costs of this action be taxed against Whirlpool; and

D.    For such other and further relief as this Court may deem just and proper.

9

This _____ day of February, 2015.

David M. Bessho
*Pro Hac Vice Motion Submitted*
Cozen O'Connor
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-2000
dbessho@cozen.com

Cassie D. Preston
*Pro Hac Vice Motion Submitted*
Cozen O'Connor
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-2000
cpreston@cozen.com